FOR THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF NEW MEXICO

UNITED NUCLEAR CORPORATION,
a Delaware corporation,

    Plaintiff,

    vs.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, British insurers, *et al.*,

    Defendants.

No. 15-CV-137-MV-SCY

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff United Nuclear Corporation's ("UNC") Motion to Remand. Doc. 13. The Court, having considered the Motions, briefs, relevant law, and being otherwise fully-informed, finds that Plaintiff's Motion to Remand is well-taken and therefore will be **GRANTED.**

**BACKGROUND**

Beginning in the 1960s, and continuing into the 1980s, Plaintiff UNC, a Delaware corporation, operated three uranium mining sites in New Mexico ("the Sites"). Doc. 1-1 ¶¶ 13-14, doc. 22 at 3. In conjunction with the operation of the Sites, UNC purchased umbrella and excess liability coverage (collectively, the "Policies") from Defendants Lloyds of London, World Auxiliary Insurance, Assicurazioni Generali, and The Edinburgh Assurance Company (the "London Insurers") for the period from April 1, 1965 through August 1, 1973. Doc. 1-1. ¶ 42. The umbrella policies and excess liability policies carried annual, per occurrence limits of $1,000,000, and $4,000,000, respectively. *Id.* The Policies mandate coverage for "past and

1

future defense and indemnity costs. . . . related to claims asserted against UNC under CERCLA, the Mining Act, WQCC regulations, mine closeout permitting and groundwater abatement plan requirements, regulatory notices of violation, lawsuits, and other claims concerning alleged environmental property damage" at the Sites.  *Id.* ¶ 46.  They also contain a Service of Suit clause, by which the London Insurers agreed to "submit to the jurisdiction of any Court of competent jurisdiction within the United States and [to] comply with all requirements necessary to give such Court jurisdiction."  *Id.* ¶ 8.

Defendant Resolute is a Delaware corporation and an operating subsidiary of National Indemnity Company ("NICO"), a reinsurer.  *Id.* ¶¶ 51-52.  In 2006 and 2007, NICO, under a retroactive reinsurance agreement, assumed the pre-1992 environmental liability claims of the London Insurers, acting as the agent of the London Insurers for the purposes of claim determinations, payments, and conduct in litigation, including coverage litigation.  *Id.*

Beginning in 1995, UNC came under scrutiny from regulators and was subject to governmental environmental actions involving the Sites that required it to spend tens of millions of dollars in investigation, remediation, and defense.  *Id.* ¶¶ 15-40, 46.  UNC appropriately notified the London Insurers of the claims arising from the Sites in 2001.  *Id.* ¶ 55.  UNC asserts that the London Insurers, acting in concert with and through Resolute, failed to investigate, evaluate, or adjust the claims in any effective manner and instead consistently worked to delay the payment of benefits in order to secure financial benefits for themselves.  *Id.* ¶¶ 53-54, 60, 65, 70, 72; Doc. 13-2 at 6-9.

Unsatisfied with the response from the London Insurers, in 2004 UNC filed a breach of contract action in the Eleventh Judicial District of New Mexico, Case No. D-1113-CV-97-00139 (the "Coverage Action").  Doc. 1-1 ¶ 56.  While the London Insurers were initially dismissed

from the action in 2009, they were reinstated in 2014.  Doc. 22 at 4; Doc. 22-6 at 1-4.  Prior to trial, the trial court struck two of Defendant Lloyds of London's defenses, finding as a matter of law that "the Insurers never intended to defend or defended UNC."  Doc. 13-1 at 5.  At trial, UNC successfully argued for directed verdicts on three defenses raised by Defendant Resolute: expected or intended injury, failure to mitigate, and known loss.  *Id.* at 6-9.  On January 30, 2015, the jury found in favor of UNC, determining that the property damage necessitating remediation did exist during the period covered by the Policies and awarding UNC the total amount of its damages, $9,609,013.25.  Doc. 13-2 at 1-5.

UNC filed the instant action in the Second Judicial District of New Mexico on January 8, 2015, alleging insurance bad faith, unfair insurance practices, unfair trade practices, aiding and abetting, and civil conspiracy.  *See generally* Doc. 1-1.  As is relevant to the resolution of the Motion now before the Court, UNC sets forth two causes of action against Defendant Resolute: aiding and abetting the London Insurers' breach of their duties, and engaging in civil conspiracy with, the London Insurers.  *Id.* ¶¶ 109-117.  The London Insurers filed a notice of removal with this Court on February 18, 2015, arguing that Defendant Resolute was fraudulently joined in the action solely in order to defeat diversity and that, therefore, there is federal subject matter jurisdiction predicated on diversity of citizenship.  Doc. 1 ¶¶ 18-21.  UNC now asks the Court to remand the suit to New Mexico state court.  *See generally* Doc. 13.

**DISCUSSION**

**I.    Fraudulent Joinder and Remand to State Court**

"A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction."  *McDaniel v. Loya*, 304 F.R.D. 617, 626 (D.N.M. 2015).  In order to invoke federal

jurisdiction predicated on this exception to the ordinary requirement of complete diversity, the removing defendant bears the burden of establishing fraudulent joinder, by showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). Where, as here, a defendant argues that no cause of action may lie against the non-diverse party, she bears the burden of demonstrating "that there is no possibility that the plaintiff will recover against an in-state defendant." *McDaniel*, 304 F.R.D. at 630 (internal quotation marks omitted). *See also Nerad v. AstraZeneca Pharmaceuticals, Inc.*, 203 Fed.Appx. 911, 913 (10th Cir. 2006) ("the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."). That is, the Court must determine whether there can be no genuine possibility that the plaintiff included the non-diverse defendant in the suit for any reason other than to defeat diversity jurisdiction and ensure a state court forum. When evaluating fraudulent joinder claims, all disputed questions of fact and all ambiguities in the controlling law must be resolved in favor of the non-removing party. *Dutcher*, 733 F.3d at 988.

**II.    UNC Has Plead a Viable Aiding and Abetting Claim Against Resolute**

The gravamen of aiding and abetting claim against Resolute is that it assisted the London Insurers in breaching common law and statutory duties to UNC. Doc. 1-1 ¶¶ 109-113. The London Insurers respond that each potential aiding and abetting claim is barred by the intra-corporate conspiracy doctrine because Resolute is an agent of the London Insurers and, at all relevant times, acted in its official capacity as such. *See* Doc. 22 at 1, 8-10. UNC has stated, at a minimum, a viable claim for aiding and abetting the London Insurers in acting in bad faith; therefore, UNC's Motion must be granted.

a. *UNC has stated a claim for aiding and abetting the London Insurers' breach*

New Mexico recognizes tort liability for the aiding and abetting in the violation of a duty. *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 947 P.2d 143, 148 (N.M. 1997) ("it is clear that tort liability for aiding and abetting a tortious action exists in New Mexico."). To state a viable claim under this theory, UNC must plead that (1) that the London Insurers owed a duty to UNC, (2) that Resolute knew that the London Insurers owed UNC a duty, (3) that Resolute intentionally provided substantial assistance or encouragement to the London Insurers to commit the act that Resolute knew was a breach of duty, and (4) that UNC suffered damages as a result. *See id.* at 148.

Moreover, "[a]n insurer is subject to a common law and statutory duty of good faith" under New Mexico law. *State Farm Mut. Auto. Ins. Co. v. Fennema*, 110 P.3d 491, 495 (N.M. 2005). Here, Plaintiff's allegations that the London Insurers held the Policies and that UNC submitted appropriate claims thereunder suffices to establish that the London Insurers owed UNC a duty to act in good faith.[1] Doc. 1-1 ¶¶ 42-46; *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 238 (N.M. 2004) (explaining that an insurer has a duty to act reasonably under the circumstances to investigate and evaluate the insured's claim, as well as make reasonable determinations regarding the settlement of any claims.) It is undisputed that Resolute, as the reinsurer for the London Insurers, was aware that the London Insurers owed a duty of good faith to UNC because Resolute was aware of the relationship between the London Insurers and UNC. Doc. 1-1 ¶¶ 51-53; *Maes*, 164 P.3d at 936 ("Reinsurance essentially operates to shift part of the

---

[1] Resolute, as the resinsurer, appears to owe no direct duty *qua* insurer to UNC. NMSA 1978, § 59A–7–11(G); *Maes v. Audubon Ins. Group*, 164 P.3d 934, 936 (N.M. 2007) ("one of the fundamental principles of reinsurance is that the reinsurer ordinarily has no liability to the policyholder of the ceding insurer.") (internal quotation marks omitted).

risk of loss under an insurance policy from the original insurer to the reinsurer, with the original insurer remaining in privity with the insured") (internal quotation marks omitted).

UNC has alleged that Resolute intentionally provided substantial assistance or encouragement to the London Insurers in committing the alleged breach by helping the London Insurers avoid paying UNC's validly asserted claims under the Policies.  UNC asserts that "by employing improper claims handling practices to reduce and slow down the payment of claims, Resolute. . .protected the London Insurers' [sic] from exposure above its 'reinsurance' limits . . . this financial arrangement has resulted in the wrongful withholding, delay, and denial of benefits owed to. . .UNC."  Doc. 1-1 ¶ 54.  As evidence of the improper claims handling practices, UNC states that it timely filed its claims under the policy, after which Resolute was itself required to perform a full and fair investigation of UNC's claims.  *Id.* ¶¶ 55, 60-64.  However, instead of conducting the required investigation, Resolute, along with the London Insurers, "pursued a litigation strategy designed to delay the payment of policy benefits for as long as possible" and exert undue financial pressure on UNC.  *Id.*¶¶ 62, 65, 72.  Finally, UNC has demonstrated, at least provisionally, that it has suffered damages.  *See*, *e.g.*, *id.* ¶ 89.  Therefore, UNC has stated an aiding and abetting claim against Resolute.

   b. *UNC's claim is not barred by the intra-corporate conspiracy doctrine*

The London Insurers primary argument against remand appears to be that because Resolute was an agent of the London Insurers, the prohibition against intra-corporate conspiracy doctrine bars recovery for UNC's claims.  *See, e.g.* Doc. 22 at 1-2.  The intra-corporate conspiracy doctrine provides that because a conspiracy requires at least two individuals to act, where a conspiracy is alleged to exist between a corporation and its agents and the agents acted on behalf of its principal, no conspiracy can exist, as "that would be tantamount to a person

6

conspiring with himself." *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1199-1200 (D.N.M. 2007) (internal quotation marks omitted).

The London Insurers' invocation of this doctrine must fail. First, because no New Mexico court has ever applied the intra-corporate conspiracy prohibition to an aiding and abetting claim, and because any ambiguities in the law must be resolved in favor of UNC, I therefore cannot find that its aiding and abetting claim is necessarily barred. *Dutcher*, 733 F.3d at 988. While the London Insurers contend that unless Resolute acted solely for its own benefit, the intra-corporate conspiracy doctrine must bar its claims, the New Mexico cases they cite for this proposition are inapposite. Both *Deflon v. Sawyers* and *Ettenson v. Burke* involve tortious interference with contract claims levied against corporate officers. There, the reason that the corporate agent acted was central to determining whether a tort existed *at all*, because if the corporate agent acted in the best interest of the company, there could be no cause of action, whereas if he acted for his own personal benefit, a tort had been committed. *Deflon v. Sawyers*, 137 P.3d 577, 581 (N.M. 2006); *Ettenson v. Burke*, 17 P.3d 440, 446-47 (N.M. Ct. App. 2000). Nor does this Court's ruling *E.E.O.C. v. MTS Corp.* lend any assistance. 937 F.Supp. 1503, 1513 (D.N.M. 1996). There, the Court addressed a situation in which officers of a corporation, who were also shareholders, allegedly conspired with the corporation to discriminate against an employee. *Id.* at 1513. The plaintiff argued that the corporation and its officers had conspired to wrongfully terminate him because he had AIDS and that the intra-corporate conspiracy doctrine could not apply because the defendant officers had acted on their independent interest as shareholders to prevent an employee walkout (due to employee discomfort with the plaintiff's health status) and protect business revenue. *Id.* at 1513-14. In declining to find a conspiracy, the Court explained that the defendant officers' motivation for preventing an employee walkout was

7

"clearly of the type contemplated by the courts as representing corporate considerations" and "[t]he financial interests of the [defendant] shareholders [of the defendant corporations] are the same as the corporate concerns of the defendant corporations . . . shareholder revenues cannot be among the personal reasons contemplated by the exception to the intracorporate conspiracy doctrine." *Id.* at 1514.

Further, under New Mexico law, reinsurers are usually not agents of the insurance companies from whom they assume risk for the purposes of negotiating and settling claims. *Maes*, 164 P.3d at 941.  While is true that the New Mexico Supreme Court has suggested that a reinsurer will be an agent of the insurance company where "it is clear from the reinsurance agreement that the reinsurer has control over the relationship that the original insurer has with its policyholders," the Court cannot make such a factual finding with the information before it.  *Id* internal quotation marks omitted). The reinsurance agreement between Resolute and the London Insurers has not been provided to the Court, and it not clear from the Complaint what level of control Resolute exerts over the London Insurers' relationship with UNC.  As the New Mexico Court of Appeals has explained, the "[t]he existence of agency is a question of fact." *Freeman v. Fairchild*, 340 P.3d 610.  In the absence of the reinsurance agreement, or more specific facts articulating the precise nature of the relationship between the London Insurers, Resolute, and UNC, the Court simply cannot determine whether Resolute exercises the requisite level of control to qualify as an agent under New Mexico law and, therefore, whether the intra-corproate conspiracy doctrine could operate on these facts.  *See Maes*, 164 P.3d at 941

Finally, even if Resolute is, in fact, an agent of the London Insurers under New Mexico law, it would appear that UNC has stated a valid claim against it.  As the New Mexico Court of Appeals explained in *Stinson v. Berry*, relying on the Restatement (Second) of Agency §§ 343-

8

35, "the rule is that agents are liable for their own tortious acts. . . if [agents] engage in tortious conduct, even though acting within the scope of their [agency], they can be personally liable for the injuries suffered as a result of that conduct. " 943 P.2d 129 (N.M. Ct. App. 1997).  *See also Archuleta v. Taos Living Center, LLC*, 791 F. Supp. 2d 1066, 1077-79 (D.N.M. 2011).  As discussed above, aiding and abetting the London Insurers in breaching their duty of acting in good faith is independent tortious conduct for which Resolute is liable, *even if* such conduct also benefitted the London Insurers as its principals. Thus, UNC *may* be able to state a viable claim against Resolute.  As UNC has stated at least one viable claim against the nondiverse Defendant in this suit, the Court declines to consider the other potential claims against it.

## CONCLUSION

Because UNC has stated at least one potential claim against Defendant Resolute, UNC's Motion to Remand must be **GRANTED**.  This action will be remanded to the Second Judicial District of the State of New Mexico.

Dated this 16th day of July, 2015.

                                                                         _____
                                                                         **MARTHA VÁZQUEZ**
                                                                         UNITED STATES DISTRICT JUDGE